OPINION
Plaintiff-appellant/cross-appellee, Board of Trustees of Miami Township ("Township"), appeals a Clermont County Court of Common Pleas judgment entry overruling a motion to vacate an arbitration award that ordered the reinstatement of Officer James Young to the Miami Township Police Department ("police department"). Defendant-appellee/cross-appellant, the Fraternal Order of Police, Ohio Labor Council, ("FOP"), represents Young's interests in this appeal. The office of the Clermont County Prosecutor has filed anamicus curiae brief in support of the Township's position.[1]
On February 12, 1997, Marcey Phillips, a dispatcher at the Clermont County communications center, complained to the police department that Young had sexually harassed her during the preceding six-month period. Phillips had previously lived with Sergeant Fred Fatute. Young would often visit Fatute and Phillips at their home. Phillips insisted that Young had "grabbed her butt" on one occasion, grabbed her between her legs on another occasion, and made uninvited comments about her jeans. After Fatute and Phillips ended their live-in relationship in December 1996, Young continued to befriend Phillips, visiting her apartment numerous times. Phillips alleged that Young continued to sexually harass her and forced her to perform oral sex on him on February 9, 1997.
The Township made the following charges against Young: (1) compliance with orders, (2) violation of rules, (3) immoral conduct, (4) sexual harassment, (5) neglect of duty, (6) gross misconduct, (sexual harassment), and (7) immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, failure of good behavior, misfeasance, and nonfeasance. After an investigation, Young was terminated from his employment as a sergeant with the police department on April 2, 1997. Young immediately filed a grievance, in which he asserted that his termination was in violation of the collective bargaining agreement between the Township and the FOP.
The parties agreed to submit the grievance to arbitration. The parties agreed to the following issue for the arbitrator's consideration: "Did the Employer violate the Collective Bargaining Agreement * * * when it terminated the Grievant, James Young? If so, what should the remedy be?" The arbitrator held a three-day trial-like proceeding on the matter. On August 15, 1998, the arbitrator issued his decision, which ordered the reinstatement of Young to his former position.
The Township filed a motion to vacate the arbitration award with the trial court on September 15, 1998. FOP filed a motion to confirm the arbitration award on October 1, 1998. In its motion, the FOP requested the immediate reinstatement of Young with back pay, benefits, and prejudgment interest, retroactive to the date of the arbitration award. The trial court issued an entry on March 26, 1999 that overruled the Township's motion to vacate and denied FOP's request for retroactive back pay, benefits, and prejudgment interest. The Township then filed this timely appeal, raising two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FAILING TO VACATE THE DECISION OF THE ARBITRATOR TO REINSTATE JAMES YOUNG, WHICH DECISION VIOLATES WELL ESTABLISHED PUBLIC POLICY OF THIS STATE AND AS SUCH, UNDER REVISED CODE SECTION 2711.10(D), EXCEEDED THE ARBITRATOR'S POWERS OR WAS AN IMPERFECT EXECUTION THEREOF. (Opinion and Entry T.D. 18, 22)
In its first assignment of error, the Township argues that the arbitrator's award should have been vacated by the trial court because it violated the public policy of the state of Ohio to prohibit sexual harassment.
Arbitration provides for conflict resolution with speed and limited expense, while reducing the caseload of our court system. Therefore, the Supreme Court of Ohio has stated that "[i]t is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts." Mahoning Cty. Bd. of Mental Retardation andDevelopmental Disabilities v. Mahoning Cty. TMR Edn. Assn. (1986),22 Ohio St.3d 80, quoting Campbell v. Automatic Die Products Co.
(1954), 162 Ohio St. 321, 329.
An arbitrator's award will be upheld if it "draws its essence from the collective bargaining agreement." Queen City Lodge No.69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v.Cincinnati (1992), 63 Ohio St.3d 403, 406, quoting UnitedSteelworkers of Am. v. Ent. Wheel Car Corp. (1960),363 U.S. 593, 597, 80 S.Ct. 1358, 1361. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." Ohio Officeof Collective Bargaining v. Ohio Civ. Serv. Employees Assn.
(1991), 59 Ohio St.3d 177, syllabus.
Pursuant to R.C. 2711.10, an arbitrator's award shall be vacated if any of the following apply:
 (A) The award was procured by corruption, fraud, or undue means.
 (B) There was evidence partiality or corruption on the part of the arbitrators, or any of them.
 (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party may have been prejudiced.
 (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
An arbitrator has broad authority to fashion a remedy, even if such remedy is not mentioned explicitly in the collective bargaining agreement. Bd. of Trustees of Miami Twp. v.Fraternal Order of Police, Ohio Labor Council, Inc. (1998),81 Ohio St.3d 269, 273, citing General Tel. Co. of Ohio v.Communications Workers of America, AFL-CIO (C.A.6, 1981),648 F.2d 452, 456-457. The Supreme Court of Ohio has held the following:
 Where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed.
Bd. of Trustees of Miami Twp. at syllabus.
A court may, however, refuse to uphold an arbitration award when to do so would violate public policy. United PaperworkersInternational Union, AFL-CIO v. Misco, Inc. (1987), 484 U.S. 29,42, 108 S.Ct. 364, 373. The United States Supreme Court has stated the following:
 A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. * * * That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements. * * * In the common law of contracts, this doctrine has served as the foundation for occasional exercise of judicial power to abrogate private agreements. (Citations omitted.)
Id.
The Township argues that the evidence presented at the arbitration hearing demonstrated that Young committed eight separate violations of the Township's Personnel Manual and the Police Department's Employee Code of Conduct regarding sexual harassment. The Supreme Court of Ohio has stated that there is "a clear public policy against workplace sexual harassment."Collins v. Rizkana (1995), 73 Ohio St.3d 65, 73. The Township contends that the arbitrator's award, which reinstated Young after finding that he had committed sexual harassment, violates public policy. The Township also argues that by violating public policy, the arbitrator exceeded his powers as prohibited by R.C. 2711.10(D), which states that an arbitrator's award shall be vacated if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
A court reviewing an arbitrator's decision may not reconsider the merits of an award, even when parties allege that the award rests on errors of fact or on misinterpretation of the collective bargaining agreement. Misco, 484 U.S. at 36, 108 S.Ct. at 370. "[A]n appeal may be taken `from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from a judgment entered upon an award.' But the review is confined to the order. The original arbitration proceedings are not reviewable." Warren Edn. Assn. v. Warren City Bd. of Edn.
(1985), 18 Ohio St.3d 170, 173-74, quoting Lockhart v. AmericanRes. Ins. Co. (1981), 2 Ohio App.3d 99, 101. Therefore, we cannot reconsider and reweigh the evidence that has already been before the arbitrator.
In this case, the arbitrator found that the credibility of the victim was highly suspect. In his decision, the arbitrator stated the following:
 Ms. Phillips' well documented history of histrionic (i.e. tendency to exaggerate for her personal benefit) behavior * * * seriously undermined her credibility. The Union produced witness after witness that created a cloud of suspicion over Marcy [sic] Phillips' propensity to fabricate and exaggerate. * * * Phillips' conduct in past relationships reveals an inveterate pattern of deceit that is represented in her relationship with Fred Fatute and with the Grievant.
The arbitrator also stated that:
 The evidence and testimony more plausibly support a consenting relationship between Mr. Young and Ms. Phillips and not one where uninvited or unwanted behavior was occurring. Fred Fatute was probably in the best position to evaluate what went on between the Grievant and Ms. Phillips. He knew them both for years and observed their interactions. When asked under cross examination about the [sic] Ms. Phillips' allegation regarding the night of February 9, 1997, Mr. Fatute stated, "What I believe is that the truth is probably somewhere in the middle." I conclude that this statement best sums up the relationship between Marcey Phillips and the Grievant. The relationship between Ms. Phillips and the Grievant was punctuated by sexual innuendo and gossip about Fred Fatute. It is evident Ms. Phillips did not want to "break-up" with Fred Fatute and was seeking solace and possibly more. Mr. Young offered that solace and possibly more. The frequency and willingness of Mr. Young and Ms. Phillips to be together several times during the month of January belies the Employer's contention that this was an unwanted relationship.
After reviewing the evidence presented at the arbitration hearing, the arbitrator found that Young had violated the Township rules by (1) making inappropriate sexual remarks about Phillips to Fred Fatute at work; (2) committing unbecoming conduct as a supervisor of patrol officers by "his involvement with Ms. Phillips, his inappropriate sexual remarks regarding her in the presence of one of his subordinates * * * impair[ing] the efficiency of the operation of the department;" (3) neglecting his duty by failing to leave Phillips' residence immediately upon receiving a dispatch call on February 9, 1997; and (4) failing to comply with orders by speaking with other members of the police department about the investigation against him. However, the arbitrator found that Young's actions did not rise to the level of "gross misconduct."[2]
The arbitrator ordered Young to be reinstated, without back pay or benefits, to his former position of sergeant. The arbitrator converted Young's termination into a sixty-day suspension for these four violations of the rules, providing that "the remainder of the time off from the end of his suspension and to his reinstatement shall be considered unpaid leave." The arbitrator also ordered Young to attend the next training session on sexual harassment.
The collective bargaining agreement authorizes the arbitrator to modify decisions to discharge or suspend an employee. This agreement states the following: "The decisions of the arbitrator shall be final and binding. The arbitrator shall have authority to recommend any right or relief on an alleged grievance occurring at any time in the contract period in which such right originated." The collective bargaining agreement provides that "[e]xcept in gross misconduct, Employers [sic] agrees to use progressive discipline."
The arbitrator found that although Young had violated several rules of his employer, his only acts of sexual harassment were improper remarks made at the workplace. The arbitrator found that "these remarks were made on two occasions and did not represent a persistent level of harassment." The arbitrator did not find that Young had forced Phillips to perform oral sex or any other sexual act. As stated above, the arbitrator found that there was "a consenting relationship between Mr. Young and Ms. Phillips and not one where uninvited or unwanted behavior was occurring." Under these circumstances, the arbitrator's order to reinstate Young did not violate the public policy of prohibiting sexual harassment in the workplace. We find that the arbitrator's award was made within the purview of the collective bargaining agreement and that the arbitrator did not violate R.C. 2711.10(D). Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN FAILING TO VACATE THE ARBITRATOR'S AWARD UNDER REVISED CODE SECTION 2711.10(B) BASED UPON THE EVIDENCE OF PARTIALITY ON THE PART OF THE ARBITRATOR, THE ARBITRATOR'S FAILURE TO CONSIDER RELEVANT EVIDENCE AND THE ARBITRATOR'S FAILURE TO CONSIDER RELEVANT EVIDENCE AND THE ARBITRATOR EXCEEDING HIS POWERS. (Opinion and Entry, T.D. 18, 22)
In its second assignment of error, the Township argues that the arbitrator's refusal to consider the results of a polygraph test taken by Phillips merits vacation of the arbitration award under R.C. 2711.10(B),(C), and (D).
In this case, Phillips took a polygraph test during the course of the police department's investigation of the allegations she made against Young. At no point during the investigation did Young take a polygraph test. The Township presented polygraph testimony during the arbitration hearing, despite FOP's objections. However, the arbitrator did not consider the polygraph test results when making his final deliberation.
In his decision, the arbitrator stated that he did not consider the polygraph test results because the Township assured him that the Township did not possess these test results at the time they decided to terminate Young. The arbitrator explained that it was his policy to only review evidence which was relied upon by the Township when it decided to terminate Young. This policy is consistent with the practice followed by other arbitrators. SeeMisco, 484 U.S. at 39-40, 108 S.Ct. at 371.
Moreover, the arbitrator held a trial-like proceeding, and polygraph evidence is not generally admissible at trial absent a stipulation of the parties. State v. Souel (1978), 53 Ohio St.2d 123,133. Adherence to specific procedural safeguards is a prerequisite to the admission of polygraph evidence in a criminal trial as impeachment or corroboration of testimony. Criss v.Springfield Twp. (1990), 56 Ohio St.3d 82, 85, citing Souel. Such safeguards are necessary because "the reliability and accuracy of polygraph examinations are open to question." Id.
Unlike the typical case, which involves the question of whether polygraph test results of a defendant should be omitted, at issue in this case was whether to consider the victim's polygraph test results. In a case addressing the issue of whether the state is required to provide polygraph test results of state witnesses in discovery, the Supreme Court of Ohio held that such results are not subject to discovery because the subjective interpretations of the examiner prevent polygraph examinations from being reasonably reliable. State v. Davis (1991), 62 Ohio St.3d 326, 341-342. InState v. Rapp (1990), 67 Ohio App.3d 33, 40, the Fourth District Court of Appeals held that the trial court improperly allowed the state to introduce evidence of polygraph test results of the state's key witness and that this admission constituted reversible error. Although the admission of such evidence in Rapp was egregious in part because the polygraph results were not presented by an expert, the court cautioned that the defense's questioning of a witnesses credibility should not open the door to the admissibility of polygraph evidence. Id. at 39. The Fourth District noted the following:
 If we were to adopt such a ruling, it would become common practice for counsel to have a polygraph administered to all witnesses. Then when a witness' credibility was challenged on cross-examination, counsel could get the polygraph test into evidence on redirect on the ground that the "door had been opened" on cross-examination.
Id. We agree with the proposition that polygraph tests results taken from witnesses should not generally be admissible.
Appellant argues that the arbitrator's decision to refrain from consideration of the polygraph test results demonstrates that the arbitrator was partial to the FOP, and therefore the arbitration award should be vacated under R.C. 2711.10(B). To vacate an arbitration award on the grounds of evidence partiality requires proof of actual bias. Beck Suppliers, Inc. v. Dean WitterReynolds, Inc. (1988), 53 Ohio App.3d 98, 102; King v. SentryClaims Serv. (1991), 71 Ohio App.3d 701, 705-706. The Township has not shown how the arbitrator's refusal to consider polygraph test results was the result of actual bias. We find that the arbitrator did not violate R.C. 2711.10(B) by declining to consider the polygraph testimony.
The Township also argues that R.C. 2711.10(C) was violated by the arbitrator's refusal to consider the polygraph test results. As discussed above, a review of Ohio case law shows that polygraph tests results are not entirely reliable and therefore are only admitted under certain circumstances. The trial court considered extensive witness testimony from both Phillips and Young. We find that the arbitrator did not refuse to hear pertinent and material evidence and therefore did not violate R.C. 2711.10(C). We also find that the arbitrator did not violate R.C. 2711.10(D) because he did not exceed his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. Appellant's second assignment of error is overruled.
 FOP's Cross-appeal
FOP's cross-appeals raises three assignments of error for our review:[3]
Assignment of Error No. 1:
 THE COURT BELOW ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT WHEN IT FAILED TO CONFIRM THE ARBITRATION AWARD PURSUANT TO O.R.C. SECTION 2711.09. (Opinion and Entry T.d. 18, 20, 22).
FOP argues that the trial court erred by failing to confirm the arbitration award after denying the Township's motion to vacate. Although FOP acknowledges that the trial court implicitly confirmed the arbitration award when it denied appellant's motion to vacate, FOP requests that this court formally confirm the award.
R.C. 2711.09 states in relevant part the following:
 At any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the court of common pleas for an order confirming the award. Thereupon the court shall grant such an order and enter judgment thereon, unless the award is vacated, modified, or corrected as prescribed in section 2711.10 and 2711.11 of the Revised Code.
When a party files a motion to confirm an arbitration award pursuant to R.C. 2711.09, the court must confirm the award unless the motion is untimely or there is a motion before the trial court to modify or to vacate the arbitration award and cause to modify or vacate is shown. Warren Edn.,18 Ohio St.3d at 174.
We find that the trial court should have granted FOP's motion to confirm the arbitration award pursuant to R.C. 2711.09. Therefore, FOP's first assignment of error of its cross-appeal is sustained.
FOP also raises the following assignments of error, which are interrelated and will be addressed together:
Assignment of Error No. 2:
 THE COURT BELOW ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT WHEN IT DENIED THE REQUEST FOR BACK PAY. (Opinion and Entry T.d. 20, 22).
Assignment of Error No. 3:
 THE COURT BELOW ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT WHEN IT DENIED INTEREST ON THE BACK PAY DUE THE GRIEVANT. (Opinion and Entry T.d. 20, 22).
FOP contends that when a trial court finds that there is no basis for vacating an arbitration award, it must award back pay to a reinstated employee retroactive to the date of the arbitration award. In addition, FOP asserts that the trial court should have awarded statutory interest upon the back pay due to Young from the date of the arbitration award because the Township refused to comply with the arbitrator's order to reinstate Young and award him back pay. FOP argues that R.C.1343.03 permits statutory interest to be awarded on an arbitration award from the date of the award.
R.C. 1343.03 provides for a trial court's award of prejudgment interest. R.C. 1343.03(A) states in relevant part the following:
 [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, except that, if a written contract provides a different rate of interest in relation to the money that becomes due and payable, the creditor is entitled to interest at the rate provided in that contract.
"[P]rejudgment interest does not punish the party responsible for the underlying damages * * *, but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment." Heinz v. Steffen (1996),112 Ohio App.3d 174, 188, quoting Royal Elec. Constr.Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, 117.
A trial court's decision to deny prejudgment interest will be upheld absent an abuse of discretion. Cox v. Oliver Mach. Co.
(1987), 41 Ohio App.3d 28, 37. See, also, Wagner v. MidwesternIndemn. Co. (1998), 83 Ohio St.3d 287, 292, citing Kalain v. Smith
(1986), 25 Ohio St.3d 157, 159. This court has previously held that a judgment entered on an arbitration award may order prejudgment interest. Kaser Corp. v. Pope (Dec. 7, 1998), Warren App. No. CA98-06-073, unreported, at 6.
When parties agree to submit their disputes to binding arbitration, they have bargained for the arbitrator's resolution of the controversy and agree to accept the arbitration award.Marra Constructors v. Cleveland Metro. (1993), 82 Ohio App.3d 557,562, citing Goodyear v. Local Union No. 200 (1975), 42 Ohio St.2d 516. The Township failed to follow the arbitration award and failed to comply with the terms of the collective bargaining agreement. In its decision, the trial court did not provide any reason for denying the FOP's request for back pay and prejudgment interest. We find that the trial court abused its discretion by denying FOP's request for back pay and prejudgment interest, retroactive to the date of the arbitration award. Therefore, FOP's second and third assignments of error of its cross-appeal are sustained.
The arbitration award is hereby confirmed. This court orders back pay and prejudgment interest to be charged retroactively to the date of the arbitration award.
Judgment affirmed in part and reversed in part. This matter is remanded to the trial court to calculate back pay and prejudgment interest.
 _______________________________ Presiding Judge VALEN, J.
POWELL, P.J., and YOUNG, J., concur.
[1] The public policy issue raised in the prosecutor's amicuscuriae brief is specifically addressed herein.
[2] "Gross misconduct" is defined in Article 9.4 of the collective bargaining agreement as the following:
 [A]ny infraction which endangers the health and safety of any Township officer or employee or citizen; any action which subjects the Township to civil or criminal liability of any form; repeated absences without leave; and any other conduct of the employee which the Employer feels could prevent the Employer from providing services to the Township.
[3] For purposes of our discussion, we have renumbered the assignments of error of FOP's cross-appeal.