The **STATE of Ohio, Appellee,**

v.

**RAPP, Appellant.**

[Cite as *State v. Rapp* (1990), 67 Ohio App.3d 33.]

Court of Appeals of Ohio,
Ross County.

No. 1544.

Decided March 22, 1990.

34

*Richard Ward*, Prosecuting Attorney, and *Scott W. Nusbaum*, Assistant Prosecuting Attorney, for appellee.

*James T. Boulger*, for appellant.

GREY, Judge.

The defendant, Robert Rapp, was tried by jury in the Ross County Common Pleas Court and found guilty of trafficking in marijuana, in a quantity less than the minimum bulk amount, in violation of R.C. 2925.03. From the judgment so entered, Rapp has filed a timely notice of appeal to this court.

The record reveals the following facts. During the spring of 1987, the Mead Corporation in Chillicothe ("Mead") contracted with Professional Law Enforcement, Inc. ("PLE") for an undercover agent to conduct a drug investigation at its facility. PLE provided Mead with several names of agents in its employ. Ross County Sheriff Thomas Hamman planned to work closely with the undercover agent. He made the ultimate decision and chose agent Edward Coughlin.

Coughlin was deputized by Sheriff Hamman and began work at Mead in July 1987. Sheriff Hamman provided Coughlin with money for the drug buys, instructed Coughlin on the reports he was to keep, and met or spoke with him on numerous occasions.

Coughlin began work at Mead on July 8, 1987.

According to Coughlin, he first spoke with the defendant, Rapp, in regard to the purchase of marijuana on November 7, 1987. On November 9, 1987, Rapp sold Coughlin approximately a quarter ounce of marijuana in a plastic baggy. The cost was $30. The transaction occurred during their shift at Mead.

On March 24, 1988, a second transaction occurred. Coughlin met Rapp at Mead Park. Coughlin entered Rapp's car and the two drove around the block. Coughlin simulated the smoking of a marijuana cigarette. Rapp then sold Coughlin approximately a quarter ounce of marijuana in a plastic baggy. The cost was $35.

**36**

On April 22, 1988, a Ross County Grand Jury returned an indictment charging Rapp with two counts of trafficking in marijuana in a quantity less than the minimum bulk amount in violation of R.C. 2925.03. The first count concerned the sale on November 9, 1987 and the second count concerned the sale of March 24, 1988.

At trial, Rapp admitted the sale of a quarter ounce of marijuana to Coughlin on the dates set forth in the indictment. He raised the defense of entrapment. The jury returned a verdict of not guilty on count one and guilty on count two of the indictment. Rapp was sentenced to a term of one year in the Ohio Reformatory but was granted bond pending appeal.

Appellant has set forth his first assignment of error as follows:

"The trial court erred to the prejudice of the defendant in preventing defense counsel from cross-examining the state's key witness, an undercover agent, on matters concerning said witness's credibility and possible bias and prejudice, which conduct on the part of the trial court denied to the defendant the right secured to him under the Sixth Amendment of the United States Constitution to be confronted with the witnesses against him."

In this assignment of error, Rapp argues that the trial court erred in not permitting him to cross-examine the state's key witness, Coughlin, concerning approximately $10,000 of 1987 income, his previous work as an undercover agent and the results thereof, whether he had ever complained of a medical problem in order to induce a person to sell him a controlled substance while employed at Mead, and his statements while employed at Mead concerning use of controlled substances during that time.

Appellant contends that the credibility of Coughlin is crucial to his defense of entrapment. By limited cross-examination, Rapp argues, he was denied his Sixth Amendment right to confrontation.

Evid.R. 611(B) provides:

"Cross-examination shall be permitted on all relevant matters and on matters affecting credibility."

The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. The trial judge retains wide latitude to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Id.*

Appellant first argues that the trial court erred in not permitting him to cross-examine the state's key witness, Coughlin, concerning approximately

$10,000 of 1987 income. Appellant contends that he was precluded from developing "inferences concerning the economic incentive to perform as a witness in a criminal case to the satisfaction of his employer." Simply put, if Coughlin could not find someone to sell him drugs, he would be out of work.

It is beyond question that a witness' bias and prejudice resulting from his pecuniary interest in the outcome of the proceeding is a matter affecting credibility under Evid.R. 611(B). *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265. To restrict a defendant's right to cross-examine serves no useful purpose, hinders the truth-seeking function of a trial, and clearly violates his guaranteed Sixth Amendment right of confrontation.

In a criminal case where the defendant raises the affirmative defense of entrapment, he has admitted the crime, so the only issue is a question of inducement, *i.e.*, where did the idea to commit the crime originate? In order to determine what the inducement was, one must first determine the motives of the parties involved. A thorough cross-examination of Coughlin would have enabled the jury to consider Coughlin's underlying motive and better assess the competing versions of the truth.

■ Appellant next argues that the trial court erred in not permitting him to cross-examine Coughlin concerning his previous work as an undercover agent and the results thereof. Rapp was precluded from developing an inference that Coughlin's job was on the line unless he performed to the satisfaction of PLE by catching somebody.

The trial court permitted in depth inquiry into Coughlin's past assignment at Ropey Rubber Company in Akron. Coughlin testified that he did not find anyone to sell him drugs at Ropey.

Appellant also argues that the trial court erred in not permitting him to inquire into whether Coughlin had ever complained of a medical problem in order to induce a person to sell him a controlled substance while employed at Mead. Again, Coughlin's response possibly could have shed light on Coughlin's motives in dealing with Rapp and could have supported Rapp's defense of entrapment.

■ Appellant finally argues that the trial court erred in not permitting him to inquire into statements made by Coughlin concerning his own use of a controlled substance while employed at Mead. The state argues that such inquiry would have only served to confuse the jury. Such an argument implies that this jury was not capable of sorting out information presented.

The question then becomes, what possible purpose is served by withholding such information? As previously stated, this court believes there is no such purpose. We believe that Evid.R. 611(B) should be given a broad interpreta-

tion and that cross-examination should be permitted on all *relevant* matters. The trial court erred by not permitting such cross-examination. Rapp's first assignment of error is well taken and is sustained.

Appellant has stated his second assignment of error as follows:

"The trial court erred to the prejudice of the defendant in allowing the state of Ohio to introduce into evidence over objection of the defendant the fact of polygraph examination and urinalysis testing of the state's key witness, an undercover agent, and in further allowing testimony concerning the results thereof."

Rapp called Gary Vest, the administrator for PLE, as a witness. During cross-examination of Vest, the following exchange occurred:

"Q. Mr. Vest, what does PLE do to assure that its undercover agents are not actually drug * * *

"OBJECTION: MR. BOULGER: Objection, your honor.

"Q. * * * users?

"MR. BOULGER: The question as framed doesn't have anything to do with this particular case.

"THE COURT: Well, as a general * * * okay, if you can be specific. As to the form of the question, sustained.

"CROSS–EXAMINATION BY MR. NUSBAUM RESUMES.

"Q. Can you describe the procedures used by PLE with Ed Coughlin in determining whether or not he was a drug user in the course of the investigation at the Mead Corporation?

"A. Yes. Basically, as I've mentioned earlier, there was a pre-employment polygraph and drug screen urinalysis. The drug screens are done randomly without notice throughout the course of an investigation. Mr. Coughlin took a polygraph examination prior to beginning this assignment because it was at the conclusion of the last and he took a polygraph at the conclusion of this * * *

"OBJECTION: MR. BOULGER: Objection. * * *

"A. investigation.

"MR. BOULGER: * * * to any reference to polygraph examinations, your Honor.

"THE COURT: Overruled.

"CROSS–EXAMINATION BY MR. NUSBAUM RESUMES.

"A. Uh, he did take a polygraph examination at the conclusion of the investigation at Mead and had taken random urinalysis tests. The tests were negative and the polygraph was a successful pass.

"OBJECTION: MR. BOULGER: Objection. Move to strike.

"THE COURT: Overruled."

Appellant contends that it was error for the trial court to allow the state to elicit such testimony for the following reasons: (1) the questioning was outside the scope of direct examination, and (2) there was no stipulation concerning the polygraph examination, nor was there evidence presented concerning the qualifications of the examiner as required by *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318.

The state argues that the defendant opened the door for the line of questioning by calling Vest as his witness. The state also contends that *Souel, supra,* does not apply because in *Souel* the polygraph test "went to whether the defendant was telling the truth about a matter germane to the case," but in this case, "the polygraph went to whether or not the witness, Mr. Coughlin, was suitable for continued employment with PLE," and "did not concern a key issue to the case as it did in *Souel*."

██ Appellee, the state of Ohio, argues that by questioning Coughlin's credibility, the defense opened the door to this line of inquiry and, therefore, testimony about the polygraph became admissible. We think this is a very dangerous precedent which, if adopted, would eviscerate the holding in *Souel*. If we were to adopt such a ruling, it would become common practice for counsel to have a polygraph administered to all witnesses. Then when a witness' credibility was challenged on cross-examination, counsel could get the polygraph test into evidence on redirect on the ground that the "door had been opened" on cross-examination.

In *State v. Collins* (1977), 60 Ohio App.2d 116, 14 O.O.3d 94, 396 N.E.2d 221, at paragraph three of the syllabus, the Hancock County Court of Appeals held that:

"A reference by a state's witness to the fact that 'there were polygraphs given' will not be held prejudicial where it does not appear to whom such tests were given and does not appear as to what results were obtained."

██ In the present case more than a reference was made. The name and results of the polygraph were revealed to the jury. Clearly, it was error for the trial court to allow the reference to the polygraph to be heard by the jury without a limiting instruction. The question then remains whether the error was harmless. In *State v. Young* (1983), 5 Ohio St.3d 221, 5 OBR 484, 450 N.E.2d 1143, the Ohio Supreme Court held that an appellate court must

determine the probable impact of the error on the minds of the average jury. Here, we can only conclude that the reference to the fact that Coughlin took a polygraph test and a urinalysis and to the results thereof had sufficient impact upon the jury to encourage them to disbelieve Rapp's defense of entrapment. The trial court erred in not giving a limiting instruction after Boulger objected.

In addition, the polygraph results were not presented by an expert. There was not an opportunity for the jury to learn of the examiner's qualifications and training, the conditions under which the test was administered, and the limitations of the possibilities of error in the technique of polygraphic interrogation. See *Souel, supra.* Nor was the urinalysis result presented by an expert or properly admitted into evidence. See Evid.R. 803(6). The results were hearsay. See Evid.R. 801.

Coughlin testified that he simulated the smoking of the marijuana cigarette and removed the brownie from his mouth when he was told that it contained marijuana. Without Vest's testimony that Coughlin's urinalysis test was negative, and that Coughlin had successfully passed a polygraph test, a doubt could have been raised in the minds of the jurors as to whether Coughlin simulated the smoking of the marijuana cigarette and removed the brownie from his mouth.

The jury, to some extent, believed Rapp's defense of entrapment. Had a doubt about drug abuse been raised in the minds of the jurors, Coughlin would have been discredited and the jury more inclined to further believe Rapp's defense of entrapment. We cannot say that Rapp was not materially prejudiced by Vest's testimony about the results of the urinalysis and polygraph tests.

Appellant's second assignment of error is sustained. The decision of the common pleas court is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

Homer E. Abele, P.J., concurs in judgment only.

Harsha, J., concurs in part and dissents in part.

Harsha, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's affirmance of the appellant's first assignment of error since the record reveals that cross-examination was not improperly restricted in the areas of Coughlin's previous income and employment. Errors, if any existed, with respect to questions concerning alleged

medical inducements or drug usage by Coughlin, were harmless given other evidence before the jury.

Because I concur with the majority opinion's analysis of the second assignment of error, I concur in the judgment reversing the appellant's conviction.