OPINION
This matter presents an appeal from a jury verdict and judgment rendered upon such verdict by the Jefferson County Common Pleas Court, finding defendant-appellant, Victor Mallory, guilty of trafficking in drugs, in violation of R.C. 2925.03(A), trafficking in drugs within the vicinity of a juvenile, in violation of R.C. 2925.03(A) and possession of drugs, in violation of R.C. 2925.11(A).
On July 1, 1997, Jason Fato (Fato), a confidential informant for the Jefferson County Prosecutor's office, contacted Officer John C. Myers (Myers), supervisor for the Jefferson County Task Force, about a possible drug buy. Myers then authorized, funded and supervised Fato's transaction. The transaction was to take place at 1313 Arlington Avenue located in Steubenville, Ohio. Myers had given Fato $50.00 to make an initial purchase from appellant.
Subsequently, Fato along with Michael Thress (a co-defendant and witness in this case) made arrangements with appellant to purchase crack cocaine. Fato and Thress then traveled to the subject address, whereby Fato was able to purchase .15 grams of a hard beige substance from appellant with the $50.00. Afterwards, Fato met with Myers in order to turn over the substance. Myers then conducted a field test on the substance, finding that it tested positive for the presence of crack cocaine. At this point, Fato informed Myers that the home contained still more crack cocaine. Acting upon this information, Myers authorized a second purchase.
After conducting the field test and receiving appellant's prior criminal history, Myers sought a search warrant for the address in question. The search warrant and accompanying affidavit was sworn to and prepared by Steubenville Narcotics Detective John Green, and authorized by a judge.
Later, on July 1, 1997, Fato and Thress again met with appellant at the Arlington address and purchased $375.00 worth of crack cocaine, weighing 1.78 grams. Also present during this second transaction were Tamala Wade (appellant's previous girlfriend and lessee of the residence) and their minor daughter. Subsequent to this second purchase, Fato again met with Myers to transfer and test the substance, which ultimately tested positive for the presence of cocaine.
Officers then opted to conduct a nighttime search on the residence. Prior to physically entering the residence, Detective Green noticed appellant on the living room couch. Detective Green testified that as he knocked and announced himself, appellant reached under the cushion of the couch. (Tr. 145-146). Once the search team gained access into the residence and secured appellant, Detective Green reached under the cushions and found a baggie of white rocks. This was the same couch under which appellant was observed reaching.
Upon further search of the residence, a second officer, Detective Mark Turner, found shoes and a wallet belonging to appellant. The wallet contained exactly $425.00, the same amount of currency Myers had provided Fato. The officer was also able to match the serial numbers of this money to those recorded prior to each transaction by Myers. The search further revealed the presence of Ms. Wade and the minor child in an upstairs bedroom. At this point Myers read appellant and Ms. Wade the Miranda
warning. Myers testified that both individuals verbally agreed that they understood their rights as were read to them. Myers then asked appellant whether he was "willing to cooperate with us, you know, to help yourself?" (Tr. 200). The record reflects that appellant responded in the affirmative to this question. Myers then asked appellant "how did my $425 get in your wallet?" When appellant responded that he did not know, he was escorted from the residence by an officer and transported to the police station.
On August 14, 1997, the Jefferson County Grand Jury indicted appellant on one count of trafficking in drugs, one count of trafficking in drugs within the vicinity of a juvenile and/or school and one count of possession of drugs. Additionally, plaintiff-appellee, State of Ohio, sought the forfeiture of appellant's 1988 Chevrolet Van pursuant to R.C.2925.42.
A jury trial commenced on October 2, 1997. At the close of appellee's evidence, the school vicinity specification and the forfeiture claim were dismissed. Following due deliberation upon the evidence and testimony presented, the jury returned a guilty verdict on all three counts, along with the specification for committing the offense in the vicinity of a juvenile.
On October 3, 1997, the trial court entered judgment on the jury verdict and sentenced appellant to a definite incarceration term of eleven months for trafficking in drugs, a definite incarceration term of four years for trafficking in drugs within the vicinity of a juvenile and a definite incarceration term of seventeen months for possession of drugs. All three sentences were ordered to run consecutively for a definite incarceration term totaling six years and four months.
On November 10, 1997, appellant filed an untimely notice of appeal. On March 5, 1998, this Court sua sponte granted appellant leave to file a delayed appeal.
Appellant sets forth five assignments of error on appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED WHEN IT ADMITTED STATE'S EXHIBIT 7, THE SEARCH WARRANT, AND THE ACCOMPANYING DOCUMENTATION. TR., 169."
Appellant argues that appellee's Exhibit 7, including the search warrant and other accompanying documentation, was not admissible as substantive evidence in his criminal prosecution. Appellant maintains that the admission of appellee's Exhibit 7 was erroneous because the contents were irrelevant to the issues before the jury. The exhibit contained an affidavit, which set forth appellant's previous arrest record, and an inventory of all contraband seized at the subject residence. Appellant asserts that he was only charged with possession of a controlled substance in an amount exceeding one gram but less than five grams, not with possession of the other items listed. Appellant suggests that the admission of this exhibit exposed the jury to highly prejudicial information and due to the prejudicial nature of this information, he was denied a fair trial. However, the record is absent any objection to such admission by appellant's counsel.
This court has consistently held that a reviewing court need not consider an error which should have been brought to the trial court's attention at a time when such error could have been avoided or corrected. State v. Williams (Sept. 28, 1999), Noble App. No. 245, unreported. The failure of a party to raise objection to such error during trial results in its waiver, absent "plain error". State v.Nicholas (1993), 66 Ohio St.3d 431, 435-436; Crim.R. 52(C). Therefore, in order for the complainant to succeed, the record must show that "but for the error, the outcome of the trial clearly would have been otherwise."State v. Underwood (1983), 3 Ohio St.3d 12, 14. However, this "rule should be applied with the utmost caution and should be invoked only to prevent a clear miscarriage of justice." Underwood, supra at 14. (See also, State v. Stanley (March 29, 1996), Mahoning App. No. 93 CA 76, unreported). Therefore, the record must demonstrate that the admission of Exhibit 7 affected the outcome of appellant's trial to such an extent that had such documents not been admitted, appellant would not have been found guilty on all counts. (See, State v. Lundgren (1995),73 Ohio St.3d 474, 487).
Appellant first focuses on the admission of his arrest record. However, the record illustrates that during opening statements, his own counsel directed the juror's attention to appellant's previous arrest record, adding that he had changed for the better. (Tr. 62). Moreover, Myers attested to the fact that prior to seeking the warrant he had requested a background check on appellant. (Tr. 103). Upon receipt of appellant's prior criminal record, it was found that he had "an extensive arrest record involving various felonies, one including drugs * * *." (Tr. 103). Myers then testified that appellant's prior record, along with the other information, were offered as factual support to demonstrate probable cause for the warrant. (Tr. 103). Myers' testimony was not offered to illustrate the propriety of the search or appellant's propensity to commit the crimes charged, but was given to explain the events as they unfolded on the night of appellant's arrest. This testimony was uncontroverted by appellant. The record also reflects that the trial court gave curative instructions regarding the use of appellant's prior criminal history.
Furthermore, considering the jury had been made aware of appellant's criminal past through his counsel's questions on voir dire, his counsel's opening statements and appellant's own testimony, prior to even being able to review the contents of Exhibit 7, it does not stand to reason that appellant was substantially prejudiced. (See, State v. Brooks (1996),75 Ohio St.3d 148, 153). On the contrary, appellee provided the jurors with overwhelming evidence of appellant's guilt and it cannot be said that but for this evidence, appellant would not have been found guilty. (See, Underwood, supra).
Secondly, appellant asserts that the inclusion of the inventory list was prejudicial, and thereby denied him a fair trial. Although the inventory list was relevant in part, appellant is correct in asserting the list contained various items found within the residence that were not attributable to him. However, the potentially prejudicial nature of the list was sufficiently reduced by the evidence presented and the testimony offered. The record demonstrates that appellant was shown not to have owned the residence, but only to be visiting. The record also shows that the residence was searched on prior occasion for drugs tied to either the prior owner or Ms. Wade's previous acquaintances. (Tr. 118, 148). Moreover, Myers asserted that the inventory list must include every item seized from the residence regardless of alleged ownership. (Tr. 112-113). Detective Green attested to this fact. (Tr. 152). This testimony illustrated to the jury that such items were listed not because they were linked to appellant, but because such items were found within the residence. (Tr. 112-113, 125). The record shows that appellee focused upon the baggie found beneath the couch cushions, appellant's tennis shoes, and his wallet to establish the charges for trafficking and possession. Therefore, the inclusion of the inventory list, though cumulative, was harmless and fails to sustain plain error. Underwood,supra; Evid.R. 403.
With his final attack on the admissibility of appellee's Exhibit 7, appellant maintains that the trial court should not have admitted any prior pleadings, which indicated or reflected judicial approval of the correctness of appellee's prosecution of the accused. In essence, appellant claims that the signature of a judge on the search warrant elevated, in the eyes of the jury, the reliability of appellee's claim that appellant was a distributor of drugs. However, appellant has failed to illustrate that this fact rises above his own speculations. State v.Carter (2000), 89 Ohio St.3d 593. The Ohio Supreme Court has held that speculation will not support a finding that a judge's signing of a search warrant would indicate guilt to the jury or improperly influence them as to an accused's guilt. Carter, supra at 603. Therefore, appellant's assertion that the judge's signature on the search warrant improperly influenced the jurors' ultimate finding is misguided and without merit.
Even assuming arguendo that the trial court erred in admitting the search warrant and accompanying documents, without objection from defense counsel, it is nevertheless clear that the remaining evidence presented at trial overwhelmingly established appellant's guilt. State v.Williams (1983), 6 Ohio St.3d 281. The Ohio Supreme Court has held "where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." Williams, supra at 290.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED WHEN IT ADMITTED STATE'S EXHIBIT 6, THE REPORT OF THE FORENSIC CHEMIST. TR., 169."
Appellant first asserts that the forensic report should have been redacted to exclude information which the trial court found to be inadmissible. Secondly, appellant takes issue with the admission of said report in its entirety as substantive evidence in the present case.
Pursuant to Evid.R. 803(6), the forensic report along with the expert testimony was properly admitted into evidence in the present case. See,State v. Lochtefeld (1993), 88 Ohio App.3d 45; State v. Rapp (1990),67 Ohio App.3d 33. The record reflects that the expert established his qualifications and training, with regard to his expertise in the area of chemical analysis of substances. (Tr. 155-156). He stated that this type of substance analysis was a regular part of his duties and attested to the custodial procedures undertaken in the case sub judice. (Tr. 158-159). The expert also asserted that he exercised control and took full responsibility for the evidence once it is received and assigned, and throughout the testing process. (Tr. 157-158). He then authenticated the report and physical evidence presented and attested to the type of test used to identify the presence of cocaine for this case. (Tr. 160). Moreover, the record reflects that appellant took this opportunity to cross-examine the expert as to his expertise in this area. (Tr. 165-166). As a result, the record demonstrates the trustworthiness of the report and the results contained therein. See, Lochtefeld, supra; Cf.Rapp, supra. Therefore, the report was properly admitted under Evid.R. 803(6).
In response to appellant's contention, the report did include additional items found within the residence, but such evidence is considered cumulative. The record reflects that the expert testimony focused on those substances involved in the two transactions and what was found in appellant's possession at the time of the search. This testimony established the elements required for the jury to find appellant had possessed and trafficked an illegal substance. See, R.C. 2925.03(A) and 2925.11(A). Overall, the evidence presented overwhelmingly demonstrated appellant's guilt. Underwood, supra. As such, the admission of this report was harmless beyond a reasonable doubt. Williams, supra. Moreover, as was stated in appellant's first assignment of error, there was sufficient testimony presented to distinguish what items were attributable to appellant and those simply found within the residence.
Additionally, this court finds the ruling of the Fifth Appellate District to be persuasive, wherein the court found that the burden is upon defense counsel to review those documents ordered redacted prior to their submission to the jury. State v. Jones (April 13, 1998), Stark App. No. 1997 CA 00234, unreported. Even though the trial court indicated it would redact the irrelevant portions of the document in question, it was still incumbent upon defense counsel to review the document prior to its submission to the jury. Jones, supra. Therefore, the decision to admit appellee's Exhibit 6 was within the sound discretion of the trial court. Appellant presents no argument or evidence that the trial court abused its discretion in admitting this exhibit. Furthermore, the admission of the report is found to be harmless, failing to rise to the level of plain error. Underwood, supra.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "THE TRIAL COURT ERRED WHEN IT ADMITTED STATEMENTS MR. MALLORY MADE TO THE ARRESTING OFFICER. TR., 200."
Appellant asserts that appellee had to demonstrate that he knowingly, intelligently and voluntarily waived his Miranda rights prior to admitting custodial statements into evidence. Appellant concedes that the arresting officer read him the Miranda warning, however appellant takes issue with whether he waived his rights prior to questioning.
The record fails to illustrate that appellant ever challenged the introduction of these statements, either by pretrial motion or by objection at trial. Therefore, the failure by a criminal defendant to challenge the admissibility of a confession by way of a pretrial motion constitutes a waiver of later challenges pursuant to Crim.R. 12(B)(3). Furthermore, it is only when the admission of a confession is challenged that the State must prove by a preponderance of the evidence that the confession was voluntary.
According to Crim.R. 12(B), "prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial: (3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Such motions shall be filed in the trial court only."
A review of the record demonstrates that appellant was read hisMiranda rights prior to any questioning. As the arresting officer completed a reading of the Miranda warning, he then asked appellant if he understood those rights. At this point, appellant responded affirmatively. The arresting officer then asked appellant if he was willing to cooperate and the officer again asked appellant if he understood his rights. Appellant answered that he understood his rights and was willing to cooperate with the officer. Appellant was then questioned as to how the pre-marked buy money ended up in his wallet, to which he replied that he did not know. Thereafter, the officer ceased questioning and had appellant transported to the station. (Tr. 200-202).
The record fails to illustrate that prejudice resulted from appellant's statement as it did not possess anything of an incriminating nature. The extent of the questioning by the arresting officer was brief and limited. Once the officer understood that appellant was unwilling to cooperate, he ceased any questioning and had appellant removed from the residence. Moreover, it was not the duty of appellee to demonstrate that appellant's custodial statement was offered after a voluntary waiver. It was incumbent upon appellant to offer a formal objection to the custodial statement, thereby properly placing the issue before the trial court. Absent said objection, appellee was not required to demonstrate waiver.
Therefore, appellant's claim of error on appeal is waived. State v.Williams (1977), 51 Ohio St.2d 112. A criminal defendant who fails to move to suppress in a pretrial proceeding waives any challenge to the admissibility of the evidence. Williams, supra.
Appellant's third assignment of error is found to be without merit.
Appellant's fourth assignment of error alleges:
 "THE TRIAL COURT ERRED WHEN IT PERMITTED PROSECUTORIAL MISCONDUCT. TR., 190-192, 195, 212."
Appellant presents three separate instances of alleged misconduct which he believes, both individually and collectively, deprived him of a fair trial as guaranteed by the Sixth and Fourteenth Amendments. With each issue, appellant avers that the conduct of the prosecutor was improper and thus, constituted reversible error. Nevertheless, the record is absent a formal objection regarding each instance claimed by appellant. Therefore, the record must show that but for appellee's improper conduct, the outcome of the trial would have been otherwise. Nicholas,supra.
Appellant takes issue with appellee's reference to his past criminal history, appellee's questions regarding his payment of child support and appointed attorney, and appellee's comments made during the closing summation. Evid.R. 404(A)(1) stipulates that, "evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; * * *." It is apparent that appellant chose to put his character at issue throughout the trial. Therefore, pursuant to Evid.R. 609(A)(2), appellee was permitted to introduce appellant's prior convictions so long as the probative value outweighed the danger of unfair prejudice as set forth under Evid.R. 403. (See also, State v. Wright (1990), 48 Ohio St.3d 5). Such determinations remain within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. Wright, supra. Moreover, this court has recognized that the "alleged misconduct of a prosecutor during trial cannot be made a ground of error unless the conduct deprives the defendant a fair trial." Williams, supra, quotingState v. Apanovitch (1987), 33 Ohio St.3d 19, 24. The effect of the alleged misconduct must be judged in the context of the entire trial.State v. Keenan (1993), 66 Ohio St.3d 402, 410.
The record reveals that appellant's counsel initially addressed the jury during opening statements by asserting that, "[appellant] did get into trouble a couple of years ago in Akron in Summit County and he paid the penalty for that crime. Since that time he has a good job in Cleveland. * * * in Saint Vincent Charity Hospital * * * being in the hospital, he knows what drugs do to people." (Tr. 62).
Appellant then took the stand in his own defense, going into more depth as to the nature of his work and the fact that his training for his job resulted from being in the armed forces. (Tr. 175-176). He further stated that he was only visiting the area briefly to help out his former girlfriend and mother of his child. (Tr. 177). Appellant maintained that he did not participate in any type of drug transaction, but only met with Thress so that Thress could repay him for a past debt. (Tr. 177). He acknowledged meeting Fato, implying that Fato was under the influence of drugs at the time. (Tr. 178). Appellant asserts that Thress repaid him the $375.00 owed, but again denied that it was in payment for drugs. (Tr. 180). Appellant stated that he had brought down approximately $530.00 from his home prior to receiving the money from Thress. (Tr.181).
Appellant also stated that he currently made about $10.25 per hour at the hospital and that he had just been paid on June 28th. (Tr. 181). Appellant claimed that he had two money orders already endorsed which turned up missing after the search. (Tr. 181). Appellant continued by insisting that the events as previously attested to by appellee's witnesses were absolutely untrue. (Tr. 182-186).
Consequently, due to the nature of the above testimony appellant opened the door to subsequent attacks upon his character. Evid.R. 609. On direct examination, appellant testified that appellee's witnesses were untruthful and insisted that he had been "set up". The record also reveals that throughout cross-examination, appellant denied he had sold drugs and alleged that circumstances surrounding this arrest were similar to those in his prior arrest. (Tr. 185-198). Therefore, appellee's use of appellant's prior criminal record was a permissible method of testing his credibility. Moreover, the record reflects that the trial court took preventative measures, by instructing the jury as to the limited purpose for which they were to consider appellant's prior conviction. (Tr. 230).
Assuming arguendo appellant had objected at trial, the alleged error would still fail as appellant opened the door to questions regarding his character and the trial court provided limiting instructions in order to protect appellant's rights. The trial court ensured that appellee's examination stayed within statutory confines, allowing only questions concerning the type of crime and where it took place and precluding questions concerning the surrounding circumstances. Therefore, the first part of appellant's argument fails.
Appellant next asserts that it was improper for the prosecutor to portray him as an individual who failed to meet his financial responsibilities, considering such information was not pertinent to the case. Appellant further maintains that this was an impermissible attempt to use other act evidence, to portray appellant in an unflattering light to the jury. However, as the record reveals such information was relevant in discerning how appellant came into possession of exactly $425.00 in marked bills which were found in his wallet.
Appellant insisted that he legally obtained the money by testifying that the money in his wallet was received from Thress for a debt. (Tr. 177-180). However, as he also stated that Thress only paid him $375.00. Moreover, appellant testified that he came from Cleveland with $530.00, had a steady job that paid $10.25 per hour and that he had recently been paid. Considering the conflicts generated by appellant's own testimony, appellee's line of questioning was an appropriate method to test appellant's credibility. (See, Evid.R. 609 and Wright, supra). Furthermore, determinations of whether to admit evidence remains within the sound discretion of the trial court, and based upon the above analysis it cannot be said that the trial court acted improperly. Statev. Taylor (1997), 78 Ohio St.3d 15. Therefore, the record fails to show that but for this error, the outcome of the trial clearly would have been otherwise. Underwood, supra. Therefore, the second part of appellant's argument fails.
Appellant also asserts that it was improper for the prosecutor to express his personal opinion in closing arguments. Appellant's complaint is grounded on the following closing remarks made by the prosecutor:
 "Now, however, you have heard evidence and testimony in this courtroom that in my opinion clearly shows that he is no longer cloaked in the presumption of innocence but rather guilty beyond a reasonable doubt.
"* * *
"In this case we have overwhelming evidence of the Defendant's guilt both direct and circumstantial." (Tr. 212).
It must be noted that the comments made by the prosecutor in his closing argument were not objected to, and therefore, appellant has waived all but plain error. Nicholas, supra.
The Ohio Supreme Court held that, "[t]he test for prosecutorial misconduct is whether remarks made by the prosecutor were improper and, if so, whether those remarks prejudicially affected the substantial rights of the accused." Carter, supra at 603. "In the tension and turmoil of a trial, both the prosecution and defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, 165. "If a prosecutor does state an opinion, it must be based upon the evidence presented and not personal beliefs." Statev. Watson (1991), 61 Ohio St.3d 1, 10. Moreover, such comments cannot be reviewed in isolation, but must be read within the context in which they were made. Carter, supra; State v. Scott (June 30, 1998), Mahoning App. No. 94 CA 188, unreported.
Upon review of appellee's closing summation, the opinionated statements offered may be considered improper, but fail to prejudicially affect appellant's substantial rights. Carter, supra. Even though improper, such statements were supported by the testimony and evidence presented at trial. (See, Lott, supra at 165). The comments concerning appellant's guilt were based upon substantial evidence, both direct and circumstantial, that he was guilty of possession and trafficking.Watson, supra. Furthermore, prior to closing summation the trial court stipulated to the jury that such statements were not evidence, but were the beliefs of each side in relation to the evidence proffered at trial. (Tr. 210). See, Loza, supra at 75. Therefore, the record fails to reveal the level of prosecutorial misconduct necessary to illustrate that appellant was directly prejudiced by such statements. Carter, supra.
Appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "MR. MALLORY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."
Appellant first alleges that his defense counsel was ineffective during voir dire because he failed to ensure the fairness and impartiality of jurors by asking relevant questions. Secondly, appellant complains of his counsel's alleged failure to raise formal objections to the issues set forth under assignments of errors one through four.
The Ohio Supreme Court in State v. Evans (1992), 63 Ohio St.3d 231,247, held that "the conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." The test an appellate court applies to an ineffective assistance claim has been set forth by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668, 687. The Strickland test is a two-prong test that requires a showing that (1) counsel's performance was so deficient that he was not functioning as guaranteed by the Sixth Amendment, and (2) counsel's errors prejudiced the defendant and deprived him of a trial whose result was reliable. In order to merit reversal, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, supra.
Moreover, the Ohio Supreme Court in State v. Bradley (1989),42 Ohio St.3d 136, stated that there is a presumption of effective assistance of counsel. The court further stated that, "appellate review of counsel's performance must be highly deferential * * * because of the difficulties inherent making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Bradley, supra at 142. Furthermore, a reviewing court cannot use the benefit of hindsight in determining whether a defendant received effective assistance of counsel. Strickland, supra. Consequently, the benchmark for judging any claim of ineffectiveness must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." State v. Walker
(1993), 90 Ohio App.3d 352, 359, citing State v. Frazier (1991),61 Ohio St.3d 247, 254.
Generally, strategic or tactical decisions will not form a basis for a claim of ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 48-49. For this court to overturn appellant's conviction, the failure on defense counsel's part must be so egregious that it rises to the level of a breakdown in the adversarial process.Strickland, supra.
However, the record reflects that during voir dire, both defense counsel and the prosecutor asked meaningful questions in an attempt to uncover possible prejudices among the prospective jurors. Evans, supra. In fact, defense counsel exercised two challenges on prospective jurors that seemingly had a close relationship to law enforcement. These challenges suggest that defense counsel was acutely aware of the danger of possible prejudice.
Moreover, in consideration of assignments of errors one through four, it is clear that defense counsel's failure to object would not warrant a reversal of his conviction. Bradley, supra at 142. Upon examination of the record, it was found that errors one through four were without merit not solely because defense counsel failed to object, but also due to the following: 1) appellant put his character into question thus opening the door to possible rebuttal of same; 2) the forensic report, though cumulative, was not found to be prejudicial; 3) the post Miranda
statement was not prejudicial; and 4) appellee's questions were used to test appellant's credibility and the closing statements were based upon evidence presented.
Therefore, it is apparent that appellant has failed to meet the first prong of the Strickland test, by failing to demonstrate how defense counsel's performance fell below the objective standard of reasonableness. Furthermore, appellant has failed to provide this court with a scintilla of evidence in support of his claim that his trial was unfair.
Based upon the foregoing discussion, defense counsel's failure to object did not rise to the level contemplated in Strickland. Moreover, appellant has failed to demonstrate that any prejudice resulted therefrom. Due to the overwhelming evidence in the record, including appellee's eyewitness testimony, tape recording of the actual transaction and laboratory chemical analysis testimony, there fails to exist a reasonable probability that defense counsel's alleged inaction sufficiently undermined the ultimate outcome in the present case.Bradley, supra, at 142.
Appellant's fifth assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, J., concurs, Waite, J., concurs.