[Cite as *State v. Galvez Villavicencio*, 2023-Ohio-4072.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,          :

                                  No. 111970

    v.                                      :

HERNAN GALVEZ VILLAVICENCIO,    :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** November 9, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-660371-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Dominic Neville, Assistant Prosecuting Attorney, *for appellee*.

The Law Office of John T. Forristal, and John T. Forristal, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Hernan Galvez Villavicencio ("Galvez") appeals his misdemeanor conviction of assault, entered following a jury trial, claiming the trial court erred by precluding him from impeaching the victim during the cross-examination regarding

her conduct following the alleged assault. For the following reasons, we vacate the conviction and remand for a new trial on the misdemeanor charge.

{¶ 2} Galvez and the victim dated for several months before the altercation leading to the current charges. One weekend, the victim, who claimed Galvez was an alcoholic, brought food, beer, and sangria to Galvez's apartment to spend the weekend with Galvez, along with the victim's two children. Galvez and the victim had one glass of sangria each as they watched television and listened to music. The victim's children had trouble sleeping, so the victim stayed with them in a second bedroom for a short period. Galvez retired to his bedroom.

{¶ 3} Sometime during the overnight hours, Galvez unlocked the victim's cell phone (both shared each other's passwords) and saw a text message between the victim and her soon-to-be ex-husband, the father of the victim's children. The text message troubled Galvez, although the trial court precluded Galvez from testifying as to the contents at trial. According to the victim, who was inexplicably permitted to testify as to the content of the messages, "[i]t was just pictures of the kids. I went [on] a trip to Puerto Rico. I sent pictures of me, the kids, my birthday, just messages between two parents."

{¶ 4} The victim and Galvez's version of events differed. According to the victim, at some point during the early morning hours, she heard Galvez audibly crying in his bedroom and she went to investigate. Upon entering, she discovered that Galvez was upset about the text messages and he "immediately started hitting" her. According to the victim, Galvez was intoxicated and he punched her for

15 minutes before she was able to escape. The victim told the jury that she thought Galvez was going to kill her and harm her children. She also testified that Galvez locked his door to prevent her from escaping by pushing the button on the door handle, but she managed to get the door open eventually and call for emergency assistance after punching Galvez in the forehead several times.

{¶ 5} During the state's case in chief, Galvez attempted to impeach the victim's testimony through several methods, all of which were precluded by the trial court. The victim testified that she feared Galvez and ceased all contact with him as of the date of the incident. Defense counsel attempted to ask the victim about her sustained contact with Galvez through text messaging and emails following the incident in order to discredit the victim. In addition, Galvez intended to question the victim about her involvement in a scheme to beat and rob Galvez two days after the incident — the victim allegedly lured Galvez to her home where her ex-husband beat Galvez severely enough to put him in the hospital. The victim then went to Galvez's apartment to retrieve some items, some of which Galvez alleged were his possessions. According to the victim's trial testimony, she did not intend to ruin Galvez's career (he was a television reporter for a local news outlet), but her subsequent actions, according to Galvez, indicated that she intended to get him fired because he was breaking off their relationship. Galvez argued this was the reason that the victim called police on the night of the incident and inflated the events.

{¶ 6} The trial court precluded the questioning, claiming that the defendant "can't create motive after the fact." That statement was never explained. The state's

position was that the line of questioning was not relevant to the elements of the assault charge, but the state never discussed or demonstrated how the evidence was irrelevant or inadmissible as impeachment evidence.

{¶ 7} According to Galvez's trial testimony, when the victim entered the room, he told her their relationship was over while he was seated on his bed. The victim, angered by the statement, came at him and punched him in the forehead one time, causing a visible wound on his forehead. Galvez tried to stand up but was prevented by the victim, who grabbed his wrist causing visible bruising. The victim continued slapping Galvez before she exited the room and called the police. He denied hitting her in return. Galvez also testified that the door did not lock in the manner in which the victim claimed during her testimony.

{¶ 8} When police officers arrived, they were unable to determine who the aggressor was. The officers left any charging decisions to the prosecutor's office. The police officers documented Galvez's and the victim's injuries, but none of the officers indicated that Galvez was intoxicated. Galvez sustained observable bruising around his wrist and a wound to his forehead that caused blood to drip down his face. The victim had a puffy mark near her left eye, faint marks on her upper arm, and one bruise on her upper thigh, all of which she attributed to Galvez's assault.

{¶ 9} Upon that evidence, the jury found Galvez guilty of misdemeanor assault but acquitted him of the felony kidnapping charge. Galvez was sentenced to an 18-month term of community control. This appeal timely followed.[1]

{¶ 10} In the first assignment of error, Galvez claims that the trial court erred by precluding him from attempting to impeach the victim in violation of his Sixth Amendment right to confront his accuser.

{¶ 11} Galvez claims that under general principles derived from the state and federal Constitutions, he was wrongly precluded from attempting to impeach the victim's credibility through her conduct following the assault, which included allegations that she intended to ruin Galvez's career. According to Galvez, the Ohio Constitution, Article I, Section 10, secures a defendant's right to confront his accuser and when "a trial court denies a defendant his Sixth Amendment right to confront a witness against him, the error is reviewed de novo." *State v. Gonzales*, 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903, ¶ 45 (1st Dist.).

{¶ 12} The state responds that the incident regarding Galvez being lured to the victim's ex-husband's home where Galvez was attacked was irrelevant to the assault charge since it occurred after the altercation between Galvez and the victim underlying the indictment in this case. Citing Evid.R. 611 and 616, the state maintains that the trial court did not err in precluding the evidence of the attack on

---

[1] Initially, Galvez's appointed counsel filed a motion to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), claiming there were no nonfrivolous issues to substantiate an appeal. Upon review, the originally assigned panel concluded otherwise and new counsel was appointed to prosecute the appeal.

Galvez that occurred two days after the events because the evidence was not impeachment evidence and a motive to fabricate her assault story could not be proven with evidence of the victim's conduct following the assault. The state did not address Galvez's argument with respect to the trial court's preclusion of evidence pertaining to the victim's continuous contact with Galvez following the incident.

{¶ 13} The state's reliance on Evid.R. 611(B) in defense of the trial court's decision is perplexing. Galvez intended to cross-examine the victim on her motive to claim he was the aggressor based on evidence that the victim intended (and took steps) to ruin his career after he threatened to break off their relationship, which occurred on the night of their altercation. Under Evid.R. 611, "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." That rule supports Galvez's contention that he was permitted to impeach the victim's credibility based on her conduct following the assault, which according to Galvez, tended to discredit the victim's trial testimony, such as her fear of Galvez trying to kill her or the victim cutting off contact with him following the incident.

{¶ 14} On this point, the state's sole argument is that the impeachment evidence is not relevant to proving the elements of the assault as charged and, therefore, the questioning was properly excluded. This misses the point.

{¶ 15} There are two aspects of the right to cross-examination established by Evid.R. 611(B): a party "shall be permitted" to inquire into all "relevant matters" and also all "matters affecting credibility." The phrase "matters affecting credibility" is not modified by the term "relevant." Evid.R. 611(B) simply provides that parties

have the right to challenge a witness's credibility. But in order to determine the scope and admissibility of that impeachment, one must review the specific evidentiary rules pertaining to the various methods of impeachment. The admissibility of impeachment evidence does not depend on the evidence being relevant to prove the elements of the charged conduct.

{¶ 16} For example, under Evid.R. 609(A)(3), a party is permitted to attack a witness's credibility with evidence that the witness was convicted of a crime involving dishonesty or false statement, despite the fact that the conviction is not a fact of consequence for the purposes of proving the criminal conduct underlying the indictment. The relevancy of impeachment evidence extends well beyond evidence tending to prove the elements of the crime. The state's reliance on the relevance discussion for the purposes of defining the scope of a cross-examination is misplaced.

{¶ 17} According to Galvez, under Evid.R. 616(A), a defendant is permitted to impeach a witness, including the victim, by showing their bias, prejudice, interest, or *any motive* to misrepresent, which can be demonstrated through examination of the witness or through the introduction of extrinsic evidence. Galvez attempted just that at trial but was precluded from examining the victim based on the trial court's conclusion that a defendant "can't create motive after the fact." It is not clear how that rationale applies to Evid.R. 616(A). It has long been held that "[t]he exposure of a witness' motivation in *testifying* is a proper and important function of the constitutionally protected right of cross-examination." (Emphasis added.) *State v.*

*Rapp*, 67 Ohio App.3d 33, 36, 585 N.E.2d 965 (4th Dist.1990), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

{¶ 18} It is understandable that a trial court would seek to keep distinct criminal acts separate for the purposes of trial to avoid needless confusion or intermingling of irrelevant conduct. This is especially pertinent to the allegations that the victim's ex-husband beat Galvez two days after his altercation with the victim. Nevertheless, the victim's alleged conduct in facilitating the subsequent event bears on the victim's credibility with respect to her trial testimony and her motivation to testify against Galvez in his criminal proceedings. Although there is no direct connection between her testimony and her conduct subsequent to the events underlying the criminal action against Galvez, such as cases in which a codefendant is questioned regarding his motivation to testify against a codefendant, a connection to the victim's credibility nonetheless exists for the purposes of impeachment evidence.

{¶ 19} Although the incident between Galvez and the victim and her ex-husband occurred two days following the altercation underlying these criminal charges, it occurred before the victim testified at trial. The evidence of the victim's complicity and motivation to assault Galvez, which could be connected to her motive to seek a criminal conviction against Galvez, was not created after the fact. *See, e.g., State v. Brooks*, 75 Ohio St.3d 148, 152, 661 N.E.2d 1030 (1996) (a witness's pending charges or plea deal are admissible to demonstrate bias of the witness). Galvez's argument is based on his belief that he can demonstrate that the victim called the

police officers on the night of their altercation because the victim intended to have him fired after he stated his intention to break off his relationship with the victim, who days earlier filed for divorce from her ex-husband. The preclusion of all inquiries into the impeachment material violated Galvez's right to a fair trial. Although the trial court has some discretion to "impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation," *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), it cannot preclude the impeachment inquiry altogether. *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

{¶ 20} In this case, the evidence of the victim's continued contact with Galvez following the conduct giving rise to the criminal charges and her alleged involvement in the incident with her ex-husband were permissible forms of impeachment evidence. As Galvez maintained, that incident potentially demonstrates a preexisting motive for the victim to potentially exaggerate her description of events during her testimony. At the least, Galvez has demonstrated that he was entitled to explore that motivation through impeachment of the victim during cross-examination. Although the trial court could limit the extent and breadth of that inquiry, it could not altogether preclude it.[2]

---

[2] The state has not claimed that harmless error precludes the reversal. We shall not sua sponte entertain that discussion.

{¶ 21} Galvez's conviction for the misdemeanor assault is reversed, and the matter remanded for a new trial on that count.

{¶ 22} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal,

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

ANITA LASTER MAYS, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR