[Cite as *Gallaugher v. Holmes Surgical Assoc., Inc.*, 2011-Ohio-1794.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| LINDSY WILLIAMS GALLAUGHER as Administrator of the Estate of Jeremy S. Williams, deceased, | : : : : | Case No: 09CA3134 |
| Plaintiff-Appellant, | : | |
| v. | : : | |
| HOLMES SURGICAL ASSOCIATES, INC., et al., | : : : | DECISION AND JUDGMENT ENTRY |
| Defendants-Appellees. | : | File-stamped date: 3-15-11 |

APPEARANCES:

Thomas M. Spetnagel and Paige J. McMahon, SPETNAGEL AND MCMAHON, Chillicothe, Ohio, and Stanley C. Bender, Portsmouth, Ohio, for Appellant.

Gerald J. Todaro, Patrick F. Smith & Karen L. Clouse, ARNOLD TODARO & WELCH CO., L.P.A., Columbus, Ohio, for Appellees.

Kline, J.:

{¶1}     The Estate of Jeremy Williams ("Estate") appeals the judgment of the trial court in favor of Herbert M. Sinning, MD and Holmes Surgical Associates, Inc.[1]  On appeal, the Estate contends that the trial court erred by restricting its right to cross-examine Dr. Sinning.  Because we find that the trial court acted within its discretion when it limited cross-examination that duplicated previously introduced deposition testimony, we disagree.  The Estate next contends that the trial court erred when it prevented the Estate from calling a radiologist as a rebuttal witness.  Because the

_____
[1] Dr. Sinning is the sole shareholder of Holmes Surgical Associates, Inc.  For the sake of simplicity, we will refer to the defendants in this case as simply Dr. Sinning.

Estate first raised the relevant issue of whether the sonogram showed the presence of gallstones, and the trial court reasonably concluded that the Estate could not then introduce rebuttal evidence on that issue, we disagree.  Accordingly, we affirm the judgment of the trial court.

I.

{¶2}       This case concerns a laparoscopic operation to remove Jeremy Williams's gallbladder.  Unfortunately, this particular operation had a tragic result.  The expert testimony established that laparoscopic operations of this sort followed similar opening steps.  First, the surgeon needs to create an entry port into the patient's abdomen.  Second, the surgeon needs to insufflate (inflate) the abdomen with carbon dioxide gas.  Insufflating the abdomen affords the patient's internal organs space to move, which permits the surgeon to see and operate in the abdomen.  The various experts, however, disagreed on which particular method of gaining entry and insufflating the patient's abdomen was the safest.  The Estate's experts testified that use of the veress needle was the safest method.  Dr. Sinning's experts testified that the method Dr. Sinning utilized was at least as safe, if not safer, than the veress needle method.  The details of these disagreements play little part in the present appeal.  Suffice to say that Dr. Sinning used an optical trocar both for the initial insertion and for the insufflation.

{¶3}       When Dr. Sinning inserted the trocar, it punctured Williams's iliac vein.  The iliac vein is a fixed anatomical structure located in the back of a person's torso, roughly at the same depth as the spine.  Dr. Sinning then proceeded to inflate Williams's abdomen with carbon dioxide.  Some of the carbon dioxide made its way into Williams's punctured iliac vein and caused a fatal air embolism.  The anesthesiologist noticed a

drop in the oxygen in Williams's blood.  Dr. Sinning and the other physicians immediately turned the carbon dioxide off.  And the doctors attempted to resuscitate Williams, but their efforts were unsuccessful.

{¶4}     At trial, the Estate called Dr. Michael Drew and Dr. Anthony Coletta.  Dr. Drew practices in New York, and Dr. Coletta practices in Philadelphia.  Both of them testified that they were among the first to practice laparoscopic gallbladder removal in their respective locations.

{¶5}     Dr. Drew testified that the iliac vein is not in the "theater" of the surgery and that this particular injury required that the surgeon make an uncontrolled move.  He also stated that the surgery was unnecessary.  He drew this conclusion based on a form filled out at the hospital by a nurse as well as a sonogram taken of Williams's abdomen.  The form indicated that Williams stated he was feeling no pain on the morning of the surgery.  Dr. Drew also testified that a sonogram taken before the surgery did not show any gallstones.

{¶6}     Dr. Coletta testified that the use of an optical trocar for the initial insertion and insufflation itself fell below the standard of care.  Dr. Coletta also corroborated Dr. Drew's testimony that Dr. Sinning was negligent in conducting the operation.

{¶7}     Dr. Sinning called Dr. del Grosso to the stand.  Dr. del Grosso is a radiologist, and he testified in regard to the sonogram taken before the operation.  Dr. del Grosso testified that the sonogram indicated that Williams had sludge and gallstones in his gallbladder.  Dr. del Grosso specifically testified that the sonogram indicated gallstones of about 1mm in size.

**{¶8}** Dr. Sinning next called Dr. Kent Harshberger to the stand. Dr. Harshberger is a pathologist with the Montgomery County Coroner's Office, and he conducted the autopsy of Williams. Dr. Harshberger testified that he found sludge but no stones in Williams's gallbladder. But Dr. Harshberger also admitted that he could have easily missed a stone of 1mm in size.

**{¶9}** Dr. Sinning also called Dr. Jeffrey Peters and Dr. Elliot Fegelman. Both Dr. Peters and Dr. Fegelman were certified as experts in laparoscopic surgery. Dr. Peters testified that the veress needle is the most common technique, but that many surgeons believed the use of trocars was safer. He also testified that the damage to the iliac vein is not necessarily evidence of any negligence. Finally, he testified that the trocar that Dr. Sinning used was designed to be used in the manner in which Dr. Sinning used it.

**{¶10}** Dr. Fegelman largely corroborated Dr. Peters's testimony that the use of the optical trocar in this case was a reasonable choice. Dr. Fegelman also testified that he considered the veress needle a more dangerous method.

**{¶11}** Finally, Dr. Sinning testified on his own behalf. Dr. Sinning testified that he initially learned laparoscopic surgery by using a veress needle. He also testified that he eventually began to use the trocar to make his primary entry port. Dr. Sinning testified that he conducted 400 to 450 laparoscopic surgeries successfully using this particular method.

**{¶12}** After trial, the jury returned a verdict in favor of Dr. Sinning. The Estate appeals and raises the following two assignments of error: I. "THE TRIAL COURT ERRED WHEN IT RESTRICTED APPELLANT'S RIGHT TO CROSS-EXAMINE DR. SINNING." And, II. "THE TRIAL COURT ERRED WHEN IT PROHIBITED APPELLANT

FROM CALLING AN EXPERT WITNESS IN REBUTTAL TO THE MATTERS RAISED BY APPELLEES."

II.

**{¶13}** The Estate first contends that the trial court erred when it restricted the Estate's scope of cross-examination of Dr. Sinning during Dr. Sinning's case-in-chief. The Estate had called Dr. Sinning to the stand during its case by way of a video taped deposition. And during Dr. Sinning's case-in-chief, the trial court ruled that "any new topics that he goes into today, you can cross-examine him on, otherwise it will be very limited." Trial Transcript for October 19 to 23, III, at 677.

**{¶14}** "The scope of cross-examination and the admissibility of evidence during cross-examination rest within the sound discretion of the trial court." *Lewis v. Nease*, Scioto App. No. 05CA3025, 2006-Ohio-4362, at ¶80, citing *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163. "'Abuse of discretion' connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *Wells Fargo v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650, at ¶23, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶15}** "In order to demonstrate an abuse of discretion, 'the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.'" *Murphy v. Murphy*, Lawrence App. No. 09CA28, 2010-Ohio-5037, at ¶10, quoting *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 1996-Ohio-159.

**{¶16}** The Estate first cites a case from the United States Court of Appeals for the Sixth Circuit for the following proposition: "Refusal to permit cross-examination of a witness concerning matters testified to on direct examination constitutes prejudicial error." *Francis v. Clark Equip. Co.* (C.A.6, 1993), 993 F.2d 545, 550, citing *J.E. Hanger, Inc. v. United States* (C.A.D.C.1947), 160 F.2d 8, 10. We, however, find this case distinguishable from the present case. In *Francis*, the trial court refused to allow cross-examination on a particular topic after the plaintiff conducted direct examination on that topic. *Francis* at 550 ("The practical effect of the magistrate's rulings was to deny defendant the opportunity to explore evidence * * * on cross-examination after plaintiff had made unfair prejudicial use of the evidence on direct examination.") Here, the trial court simply limited cross-examination of matters that the Estate had already explored in its case-in-chief. In other words, by its own terms, the trial court's order only limited cross-examination on those matters that the Estate already had an opportunity to cross-examine Dr. Sinning on.

**{¶17}** The Estate next contends that the right of cross-examination is constitutionally protected and cites *State v. Nayar*, Lawrence App. No. 07CA6, 2007-Ohio-6092, at ¶23. This case and the cases it cites are criminal cases, and the right to cross-examine they refer to flows from the Sixth Amendment to the United States Constitution. See *State v. Rapp* (1990), 67 Ohio App.3d 33, 37 ("To restrict a defendant's right to cross-examine serves no useful purpose, hinders the truth-seeking function of a trial, and clearly violates his guaranteed Sixth Amendment right of confrontation."); *Nayar* at ¶24, citing *Rapp* at 36. The present case is civil, and the Sixth

Amendment right to confrontation does not apply.  *In re Burchfield* (1988), 51 Ohio App.3d 148, 154.

**{¶18}**     The Estate also contends that the trial court's limitation of cross-examination is a "process flaw" and that we should review such errors de novo without deference to the trial court.  Estate's Brief at 20, citing *Purvis v. Hazelbaker*, 181 Ohio App.3d 167, 2009-Ohio-765, at ¶9.  The Estate also cites an article that identifies process errors as errors that an appellate court reviews de novo, regardless of the fact that the underlying standard of review is for an abuse of discretion.  Harsha, William H., The Substance of Appeals: Standards of Appellate Review, (2003), 17, no. 6 Ohio Lawyer.  The article notes several different forms of process errors.  Starting with the principle that "when the trial court considers improper factors, or fails to consider appropriate ones, a legal error may creep into the review."

**{¶19}**     The record in fact establishes that the trial court applied an appropriate factor in its limiting of cross-examination.  Clearly, the trial court was attempting to restrict the admission of duplicate evidence by limiting the cross-examination of Dr. Sinning on topics already covered.  "Trial judges may impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, *repetitive testimony*, or marginally relevant interrogation."  *State v. Treesh*, 90 Ohio St.3d 460, 480-81, 2001-Ohio-4 (emphasis added), citing *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679.

**{¶20}**     The article also notes that the "failure to exercise discretion in the mistaken belief that it does not exist" is akin to a process flaw.  In this case, there is no indication that the trial court failed to understand it possessed discretion in allowing or limiting

cross-examination. Indeed, the use of the word "limit" in this context indicates that the trial court provided some leeway in its resolution of the issue. The trial court did not prohibit cross-examination on matters that the deposition covered, but it did indicate that cross-examination on those topics would be limited.

**{¶21}** Dr. Sinning contends that the trial court actually allowed the Estate to cross-examine Dr. Sinning on matters covered in the deposition. Dr. Sinning's Brief at 7. At trial, the Estate cross-examined Dr. Sinning on his training in laparoscopic surgery; Dr. Sinning's interaction with the Williams family after the surgery; the proximate cause of Williams's death; whether Dr. Sinning inserted the trocar in a safe manner; how deeply Dr. Sinning inserted the trocar into Williams; whether the surgery was actually scheduled; the veress needle method; and whether Dr. Sinning read the package insert that came with the optical trocar. During the deposition, the Estate cross-examined Dr. Sinning on his training in laparoscopic surgery; how Dr. Sinning knew Williams and Williams's family; whether the sonogram indicated the presence of gallstones; the conduct of the operation generally; whether there were sufficient symptoms present to justify the operation; and finally whether Dr. Sinning had read the package insert that came with the optical trocar. At least some topics were present in both cross-examinations, and we agree with Dr. Sinning that the trial court in fact permitted some cross-examination on topics that the deposition covered.

**{¶22}** Finally, the Estate contends that "[t]he only reason or logic articulated by the court for making its decision was that the admission of Dr. Sinning's deposition testimony satisfied the Estate's right to cross-exam[ine] him, even after he offered testimony on his defense on direct examination. That is flawed decision making. The

lower court did not have the discretion to apply an improper legal analysis to this evidentiary issue." Estate's Brief at 21. The Estate however fails to explain precisely why the trial court's determination relied on improper legal analysis. Nor does the Estate provide any citations of law in support of this argument.

{¶23}    Finally, we have no way of knowing what questions the Estate's attorneys wished to ask because the Estate's attorneys did not proffer them. And even if we accept that the trial court erred, we cannot find an abuse of discretion where we cannot judge whether the questions asked could have affected the outcome of the trial. See *Mynes v. Brooks*, Scioto App. No. 08CA3211, 2009-Ohio-5017, at ¶39 ("'So long as a trial court exercises its discretion in accordance with the rules of procedure and evidence, a reviewing court will not reverse that judgment absent a clear showing of an abuse of discretion with *attendant material prejudice* to defendant.'") (emphasis added), quoting *Willis v. Martin*, Scioto App. No. 06CA3053, 2006-Ohio-4846, at ¶21 (other citations omitted).

{¶24}    The trial court made its ruling before Dr. Sinning took the stand in his own defense. In that sense, the trial court's ruling was much like a ruling on a motion in limine, and in order for a party to preserve an error they "'must seek the introduction of the evidence by proffer or otherwise at trial in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.'" *Vespoli v. Encompass Ins. Co.*, Cuyahoga App. No. 94305, 2010-Ohio-5359, at ¶14, quoting *Collins v. Storer Communications, Inc.* (1989), 65 Ohio App.3d 443, 446.

{¶25}    Accordingly, we overrule the Estate's first assignment of error.

III.

**{¶26}** The Estate next contends that the trial court erred when it determined that the Estate could not put its radiology expert on the stand to rebut the testimony of Dr. del Grosso. The Estate argues that it "has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief[.]" *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 1994-Ohio-389, citing *Katz v. Enzer* (1985), 29 Ohio App.3d 118. We review a trial court's decision on whether to permit particular rebuttal evidence for an abuse of discretion. See *Phung* at 411 (finding that the trial court abused its discretion on this ground).

**{¶27}** The Estate contends that the trial court's error on this ground is also a process error. But the basis for this argument is not entirely clear from the Estate's brief. The gist of the Estate's argument is that they did not have a radiologist testify about the presence or absence of gallstones on the sonogram. Dr. Sinning, on the other hand, called Dr. del Grosso, a radiologist, to testify that the sonogram indicated the presence of gallstones. The Estate therefore concludes that it was entitled to call its own radiologist in rebuttal.

**{¶28}** But the trial court denied the Estate the opportunity to use its radiologist as a rebuttal witness. The trial court did so for two reasons. First, the question of whether gallbladder surgery was necessary or not was part of the Estate's case-in-chief. That is, this evidence went to the existence or non-existence of negligence, and the Estate should have introduced it as part of its case-in-chief. "Matters which the plaintiff bears the burden of proving are properly presented in plaintiff's case-in-chief." *Phung* at 410. Second, the trial court noted that one of the Estate's experts had testified that the

surgery was not "indicated" because the sonogram did not show the presence of gallstones.

{¶29}   Dr. Drew, the first expert witness produced by the Estate, testified as follows: "To my way of reading, I would've never, never have called those gallstones.  There were, I call them pinpoint two pinpoint dots that, they're not, they had no classic features as I say, I'm a surgeon, but I've been doing this for a long time, but I know what a gallbladder, I would not have looked at that X-Ray[sic] and say ah, it's a gallbladder stone or stones."  Trial Transcript, Day Two, at 25.  Dr. Drew also testified that even if the "specks" on the sonogram were gallstones, they were too small to account for Williams's pain.  Id. at 27.  Dr. Drew concluded that Williams did not have the proper indications for undergoing gallbladder surgery.  Id. at 23.

{¶30}   The right of rebuttal extends to matters that are "*first addressed* in an opponent's case-in-chief."  *Phung* at 410 (emphasis added).  Here, regardless of whether this was an element of the Estate's case-in-chief, the Estate's first expert witness raised the issue of whether the sonogram showed gallstones or not.  Therefore, we do not find that the trial court abused its discretion in determining that this issue was first addressed in the Estate's case-in-chief rather than Dr. Sinning's case-in-chief.  This being so, the right of rebuttal did not extend to this issue.

{¶31}   Accordingly, we overrule the Estate's second assignment of error.

IV.

{¶32}   Having overruled both of the Estate's assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and Appellant pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court

BY:  _____
        Roger L.  Kline, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No.  14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**